524 A.2d 108

**In re ERICA S.**

**No. 1179, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

April 16, 1987.

Bradford C. Peabody, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Sarah R. Kaplan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before GILBERT, C.J., and WEANT, J., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GILBERT, Chief Judge.

As a result of Erica S.'s reporting that she had been sexually abused by her mother's long-time, live-in male companion, DeWitt O., a petition was filed in the District Court for Montgomery County, Juvenile Division. The petition asserted that Erica was a child in need of assistance (CINA), namely, the court's assistance in removing her from the household wherein the alleged assailant resided.

When the case was called to trial in the juvenile court, DeWitt O. attempted to participate as a party. Judge Douglas H. Moore Jr. refused to allow DeWitt O.'s participation, and this appeal ensued. From the record we infer that at the time the appeal was taken the criminal charge of child abuse was still pending in the circuit court.

DeWitt O. admittedly was not the natural father of Erica. He staked his claim to participate in the CINA proceeding on the ground that he had lived with the child for seven to nine years and had acted as her father during that period of time. DeWitt O. argued that Erica recognized him as her father and he was named in certain school records as being her father. Furthermore, DeWitt averred that he was the father of Erica's half-brother. In sum, DeWitt advanced the theory that he was the "common law father" of Erica.

Preliminary to the CINA hearing, counsel for Erica's mother advised Judge Moore that DeWitt O. was identified in "school records and things like that" as being the child's "natural father." The statement was qualified by counsel, who added the words, "And, of course, I can't proffer that to you because I haven't got it in my hand." Contrary to the way appellant's counsel views the statement by the lawyer for Erica's mother, we think it falls well short of a proffer. Indeed, it expressly disavows being a proffer.

The sole issue posited to us is whether Judge Moore erred in ruling that DeWitt O. could not participate as a party in the CINA hearing involving Erica.

■ Appellant seems to argue that he was entitled to participate in the hearing because he is the child's "natural father." Although he admitted in the trial court that he was not the "natural father" of the child, appellant now appears to have altered his position considerably. Because Erica's mother listed him on certain school records as being Erica's father, appellant now seizes that listing and converts the seemingly innocuous misrepresentation into a positive identification. He claims that his being named by the mother in the school records as the father of the child constitutes a declaration that he is the natural father within the meaning of Md. Family Law Art., § 5–310(a)(4).

Family Law Art., § 5–310(a) defines a "natural father" as a man who

"(1) was married to the individual's natural mother at the time of conception;

(2) was married to the individual's natural mother at the time of the individual's birth;

(3) is named as the father on the individual's birth certificate, unless the man signs a denial of paternity or his nonpaternity has been established to the satisfaction of the court by affidavit or testimony;

(4) is identified by the natural mother as the father of the individual, unless the man signs a denial of paternity

or his nonpaternity has been established to the satisfaction of the court by affidavit or testimony;

(5) has been adjudicated to be the father of the individual; or

(6) has acknowledged himself to be the father of the individual, orally or in writing, and the natural mother of the individual agrees that he is the individual's natural father." [1]

There are at least two fallacies in the appellant's argument. First, § 5–310(a) to which appellant alludes is taken out of context. Section 5–310(a) is part of the adoption statutes and is concerned with those persons whose consent must be obtained before an adoption may be made pursuant to Family Law Art., § 5–311 or who must receive notice of the pending adoption, Family Law Art., § 5–322. Second, the reference to DeWitt O. in school documents as being the father of Erica does not convert DeWitt O. into the natural father because, unlike paternity suits or adoption matters, the person named in school records is not given notice or an opportunity to interpose an objection.

If DeWitt's position were correct, a mother of any child could list on school records any male and immediately make the male the "natural father" of the child. Certainly the Legislature did not intend to create, and did not create, fatherhood by allegation.

■ Whatever the law may be elsewhere, Maryland does not recognize a natural mother's long-time, live-in male companion as the "father" of the mother's children, at least

---

1. The statute seems to declare that a child may have more than one "natural father." For example, the man married to the natural mother at the time of conception, § 5–310(a)(1), may be a different man than the one married to her at the time of the child's birth. § 5–310(a)(2). Yet both are embraced within the statute as "natural father." Furthermore, the person named in the birth certificate, § 5–310(a)(3), may be different than (1) and (2). Under those circumstances, for purposes of the statute, the child would have three "natural fathers." Although the Rules Committee called the Legislature's attention to this anomaly, no change in the statute has as yet been effected.

when they were not sired by the male companion. Irrespective of how DeWitt O. may view himself, the law does not countenance fatherhood by estoppel, laches, adverse possession, or osmosis.

DeWitt O. was not a proper party to the CINA action involving Erica.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.